UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

LANGAWA HAMPTON-LEWIS,     )
     )
     Plaintiff,     )
     )
     v.     )     Case No. 2:17-cv-291
     )
NANCY A. BERRYHILL,     )
Deputy Commissioner for Operations,     )
Social Security Administration,     )
     )
     Defendant.     )

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the
Commissioner filed by the plaintiff, Langawa Hampton-Lewis, on July 5, 2017. For the
following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Langawa Hampton-Lewis, filed applications for Disability Insurance
Benefits and Supplemental Security Income on June 3, 2013, alleging a disability onset date of
October 1, 2012. (Tr. 18). The Disability Determination Bureau denied Hampton-Lewis's
applications initially on August 15, 2013, and again on reconsideration on October 10, 2013.
(Tr. 18). Hampton-Lewis filed a timely request for a hearing on November 11, 2013. (Tr. 18).
A video hearing was held on April 29, 2015, before Administrative Law Judge (ALJ) William G.
Reamon, and the ALJ issued an unfavorable decision on July 14, 2015. (Tr. 18). The Appeals
Council remanded the decision and ordered a new hearing. (Tr. 18). A new hearing was held on
January 4, 2017, before ALJ William E. Sampson, and again the ALJ issued an unfavorable
decision on January 13, 2017. (Tr. 18-30). Vocational Expert (VE), Thomas A. Gusloff, and

Hampton-Lewis testified at the hearing. (Tr. 18). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

Hampton-Lewis met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 21). The ALJ issued an unfavorable decision on January 13, 2017, and made findings as to each of the steps in the five-step sequential analysis. (Tr. 18-30). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Hampton-Lewis had not engaged in substantial gainful activity since October 1, 2012, the alleged onset date. (Tr. 21).

At step two, the ALJ determined that Hampton-Lewis had the following severe impairments: osteoarthritis, history of ankle fracture, and bipolar disorder. (Tr. 21). At step three, the ALJ concluded that Hampton-Lewis did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21). The ALJ considered Listings 1.02 and 1.06, and did not find that Hampton-Lewis's osteoarthritis and ankle fracture met or equaled the criteria specified for the listings. (Tr. 22). The ALJ found that there was no evidence in the record that Hampton-Lewis had gross anatomical deformity in any joint or lacked the ability to ambulate or perform fine or gross movements effectively. (Tr. 22). The ALJ cited evidence from the record that Hampton-Lewis had a normal gait on several occasions. (Tr. 22).

Next, the ALJ determined that the severity of Hampton-Lewis's mental impairment did not meet or medically equal Listing 12.04. (Tr. 22). In finding that Hampton-Lewis did not meet the above listing, the ALJ considered the paragraph B criteria for mental impairments which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining

2

concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 22). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 22).

The ALJ determined that Hampton-Lewis had mild restrictions in activities of daily living. (Tr. 22). Hampton-Lewis indicated that she sometimes went two or three days before bathing or combing her hair. (Tr. 22). Yet, the ALJ noted that otherwise she reported no problems with her personal care. (Tr. 22). Also, she reported that she was able to wash dishes, do laundry, sweep, drive, and shop. (Tr. 22).

Next, the ALJ concluded that Hampton-Lewis had moderate restrictions in social functioning. (Tr. 22). Hampton-Lewis indicated that she did not have any issues getting along with family members, friends, neighbors, or others. (Tr. 22). Moreover, she reported that she regularly talked to friends and family members on the phone. (Tr. 22).

Finally, the ALJ found that Hampton-Lewis had moderate difficulties in concentration, persistence, or pace. (Tr. 22). The ALJ noted that Hampton-Lewis completed four or more years of college and had a history of performing skilled work. (Tr. 23). Hampton-Lewis indicated that she can follow written and spoken instructions well. (Tr. 23). The ALJ considered the State agency consultants' opinion that Hampton-Lewis had no severe mental impairments. (Tr. 23). Thus, the ALJ found that Hampton-Lewis had no restrictions in maintaining concentration, persistence, or pace. (Tr. 23). Moreover, the ALJ found that Hampton-Lewis did not experience any episodes of decompensation. (Tr. 23). Because Hampton-Lewis did not have two marked limitations or one marked limitation and repeated episodes of decompensation, the

ALJ determined that she did not satisfy the paragraph B criteria. (Tr. 23). Additionally, the ALJ concluded that she did not satisfy the paragraph C criteria. (Tr. 23).

After consideration of the entire record, the ALJ then assessed Hampton-Lewis's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant is limited to simple, routine, repetitive tasks and occasional interaction with coworkers, supervisors, and the public. The claimant's work must involve few workplace changes.

(Tr. 23). The ALJ explained that in considering Hampton-Lewis's symptoms he followed a two-step process. (Tr. 24). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Hampton-Lewis's pain or other symptoms. (Tr. 24). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Hampton-Lewis's functioning. (Tr. 24).

The ALJ, after consideration of the evidence, determined that Hampton-Lewis's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 24). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 24). The ALJ found that the record indicated that in terms of Hampton-Lewis's alleged physical impairments she was more than minimally limited, but not disabled. (Tr. 24). He noted that she had engaged in relatively little treatment. (Tr. 25). She

underwent surgery on her right ankle on September 20, 2013, but as of October 17, 2013 she was described as healing well and having full range of motion, as well as functional strength. (Tr. 25). Also, the ALJ found that the medical records documented few functional limitations. (Tr. 25). Hampton Lewis had full muscle strength in her upper and lower extremities. (Tr. 25). The ALJ noted that the records indicated that Hampton-Lewis had a normal gait; was able to stoop and squat without difficulty; and was able to get on and off the examination table without difficulty and did not require assistance. (Tr. 25). Also, she was able to stand from a sitting position without difficulty and did not appear to be in acute distress. (Tr. 25).

Next, in considering Hampton-Lewis's mental impairments the ALJ noted that she had a history of mental health treatment. (Tr. 25). However, the ALJ indicated that Hampton-Lewis had not been hospitalized for mental health reasons since her alleged onset date. (Tr. 25). The ALJ noted that Hampton-Lewis's mental health records indicated that she only had been partially compliant with her medication. (Tr. 26). However, at the time of the decision the ALJ found that she was compliant with her medication and her most recent record reported that she was "functioning okay." (Tr. 26).

As for the opinion evidence, the ALJ assigned considerable weight to the opinions of the State agency medical consultants. (Tr. 26). The State agency medical consultants determined that Hampton-Lewis was limited to work at the medium exertional level with additional postural limitations. (Tr. 26). Next, the ALJ assigned some weight to the opinions of the State agency psychological consultants. (Tr. 27). The State agency psychological consultants found that Hampton-Lewis did not have a mental impairment. (Tr. 27). The ALJ assigned little weight to the opinions of Hampton-Lewis's treating physicians, Dana Marlowe, MD, and Kular Rajnishpaul, MD. (Tr. 27).

At step four, the ALJ found that Hampton-Lewis was unable to perform any past relevant work. (Tr. 28). Considering Hampton-Lewis's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that she could perform, including cleaner/housekeeping (200,000 jobs nationally), linen grader (50,000 jobs nationally), and marker (200,000 jobs nationally). (Tr. 29-30). The ALJ found that Hampton-Lewis had not been under a disability, as defined in the Social Security Act, from October 1, 2012 through the date of this decision, January 13, 2017. (Tr. 30).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age,

education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Hampton-Lewis has requested that the court reverse the ALJ's decision and award benefits, or in the alternative remand the matter for additional proceedings. In her appeal, Hampton-Lewis has argued that: (1) the ALJ did not support the physical RFC with substantial evidence; (2) the mental RFC was internally inconsistent, not supported by substantial evidence, and did not properly accommodate her limitations in concentration, persistence, or pace; (3) the ALJ did not evaluate her treating physicians' opinions according to 20 CFR § 404.1527; and (4) the ALJ did not properly analyze her subjective allegations according to SSR 16-3p.

First, Hampton-Lewis has argued that the ALJ did not support the physical RFC with substantial evidence. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." ***Young v. Barnhart***, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." ***Craft v. Astrue,*** 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

The ALJ assessed Hampton-Lewis's physical RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl.

(Tr. 23). The ALJ afforded some weight to the opinions of the non-examining State agency reviewing physicians who found that Hampton-Lewis was limited to work at the medium exertional level with additional postural limitations. (Tr. 26). However, the ALJ further limited Hampton-Lewis to the light exertional level based on her ankle surgery. (Tr. 26).

Hampton-Lewis contends that the ALJ, by rejecting the State agency physicians' limitations, determined the physical RFC without any support from medical opinions expressed by a doctor. However, an ALJ is not required to rely solely on medical opinions to determine the RFC. *Suide v. Astrue,* 371 F. App'x 684, 690 (7th Cir. 2010) (finding that the rejection of the opinion record left an evidentiary deficit because the rest of the record did "not support the parameters included in the ALJ's residual functional capacity determination"); *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians).

The last State agency opinions were rendered on October 9, 2013. Therefore, Hampton-Lewis has indicated the State agency medical consultants review of the record did not include evidence from her ankle arthroscopy with extensive debridement and repair when they determined that she could perform medium work. (Tr. 173, 697-99). She contends that the ALJ interpreted significant evidence that was rendered subsequent to the State agency's opinion

himself in determining that she could perform light work. Thus, Hampton-Lewis asserts that ALJ improperly rendered an independent assessment of the medical evidence.

The Commissioner contends that the ALJ's findings were supported by the opinions of the State agency physicians, Drs. Brill and Eskonen, as well as Hampton-Lewis's own complaints of pain. Moreover, the Commissioner asserts that the ALJ considered evidence subsequent to Drs. Brill and Eskonen's opinions and determined that the evidence did not include any medical opinions of disabling physical functional limitations. Finally, the Commissioner contends that it was Hampton-Lewis's burden to produce evidence of a disability and that the ALJ was free to interpret record evidence, including medical evidence.

However, Hampton-Lewis has argued that ALJ failed to analyze and omitted several allegations that were supportive of a more restrictive RFC. For example, Hampton-Lewis contends that the ALJ failed to consider that she had trouble standing for extended periods, the need to elevate her leg, and that she frequently was drowsy throughout the day. Hampton-Lewis has indicated that her testimony that she could walk only a couple blocks before her ankle would swell was consistent with the medical evidence subsequent to the State agency physicians' opinions. She asserts that her ankle surgery and her diagnosis of trochanteric bursitis corroborate her issues with standing and walking.

Additionally, Hampton-Lewis has argued that the ALJ did not explain how he decided between occasional or frequent stooping restriction, nor did the ALJ identify any analysis or reasoning underlying his conclusion. Hampton-Lewis asserts that the ALJ did not cite to specific evidence that suggested that she could engage in those postural activities occasionally, but not less.

The court may not reweigh the evidence. Rather, the court must determine if the ALJ has supported his decision with substantial evidence and provided an adequate explanation. The ALJ found that Hampton-Lewis could perform light work, which required her to be on her feet for up to six hours out of the workday; occasionally climb ramps and stairs, balance, stoop, kneel, and crawl; and lift up to 20 pounds. (Tr. 23). The ALJ relied on the State agency medical consultants' opinions in determining the RFC. However, as noted earlier the State agency consultants did not consider Hampton-Lewis's 2013 ankle arthroscopy with extensive debridement and repair. Therefore, the ALJ limited her to light level of exertion based on her ankle surgery, but agreed with the State agency medical consultants that her physical impairments were not disabling.

The ALJ may not have pointed directly to evidence in the record that indicated that Hampton-Lewis could engage in the specific postural activities, yet the ALJ discussed the medical evidence at length. "An ALJ must build an accurate and logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ has the ultimate responsibility of assessing a claimant's RFC. **20 C.F.R. § 416.927(e)(1)**. An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July 2, 1996). The court finds that the ALJ narrative discussion of the evidence was sufficient to support the physical RFC. In formulating the physical RFC, the ALJ reviewed the medical evidence of record, both before and after Hampton-Lewis's surgery. Additionally, the ALJ consider her testimony and the medical opinion evidence. Therefore, the ALJ's "middle ground" physical RFC was well-supported.

Next, Hampton-Lewis has argued that the mental RFC failed to account for her moderate restrictions in concentration, persistence, or pace and her reaction to stress.  The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record.  ***Yurt v. Colvin***, 758 F.3d 850, 857 (7th Cir. 2014) (citing ***O'Connor-Spinner v. Astrue***, 627 F.3d 614, 619 (7th Cir. 2010)); ***Indoranto v. Barnhart***, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record.").  That includes any deficiencies the claimant has in concentration, persistence, or pace.  ***Yurt***, 758 F.3d at 857; ***O'Connor-Spinner***, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); ***Stewart v. Astrue***, 561 F.3d 679, 684 (7th Cir. 2009) (indicating the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases).  The most effective way to ensure that the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical.  ***O'Connor-Spinner***, 627 F.3d at 619.

The ALJ determined that Hampton-Lewis had mild limitations in daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, or pace. (Tr. 22).   In assessing Hampton-Lewis's mental residual functional capacity, the ALJ limited Hampton-Lewis to work involving simple, routine, and repetitive tasks; occasional interaction with coworkers, supervisors, and the public; and few workplace changes.  (Tr. 23).

The Commissioner has indicated that the State agency psychologists, Drs. Joelle Larsen and Kenneth Neville, found that Hampton-Lewis could "learn, remember and comprehend simple instructions, and can complete tasks;" "interact appropriately with coworkers,

supervisors, and the public in typical work settings;" "handle routine changes found in the workplace;" and "appears capable of completing semiskilled tasks." (Tr. 139, 163). The Commissioner contends that the ALJ considered the State agency psychologists' opinions and determined that Hampton-Lewis was more limited. Thus, the ALJ considered the other record evidence and found that she had more severe mental functional limitations.

Hampton-Lewis's treating psychiatrist, Dr. Rajnishpaul Kular, found that Hampton-Lewis had serious limitations in working in coordination with others; completing a normal workday without interruption; accepting instruction and responding appropriately to supervisors' criticism; performing at a consistent pace; responding appropriately to change in a routine work setting; and dealing with normal work stress. (Tr. 948). Additionally, Hampton-Lewis's other treating psychiatrist, Dr. Dana Marlowe, also found that Hampton-Lewis was seriously limited in her ability to deal with normal stress. (Tr. 1008). The ALJ did not account for Hampton-Lewis's limitation in dealing with stress. The ALJ cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.").

Despite the ALJ's reliance on Drs. Larsen and Neville's findings, courts repeatedly have held terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace. *Stewart*, 561 F.3d at 684–85 (finding hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see also Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015). This is because "the ability to stick with a given task over a sustained period" is simply "not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620. Similarly, hypotheticals limiting the claimant to minimal social

interaction with coworkers, supervisors, or the general public failed to account for difficulties in maintaining concentration, persistence, or pace. ***Stewart v. Astrue***, 561 F.3d 679, 685 (7th Cir. 2009); *see also **Varga,*** 794 F.3d at 814. Additionally, "few work place changes" deals largely with workplace adaptation, rather than concentration, pace, or persistence. ***Varga,*** 794 at 815. Therefore, the mental RFC and the hypothetical to the VE have failed to account for Hampton Lewis's limitations in concentration, persistence, or pace.

Moreover, the ALJ asked the VE, "[h]owever, due to impairment related symptoms such as fatigue, due to the side effects of medications, this individual would be off task 20 percent of the workday. Would there be any jobs?" (Tr. 71). The VE answered, "[n]o, that would be beyond what employers would tolerate, and the person wouldn't be able to sustain any competitive work if they were operating at 20 percent off task." (Tr. 71). The ALJ considered the issue of off-task time when posing the hypothetical to the VE, but then he failed to provide any analysis of whether, for example, Hampton-Lewis was limited by any off-task allowances and, if so, for how long. *See*, *e.g.*, ***Washington v. Colvin***, 2013 WL 1903247, at *11 (N.D. Ill. May 7, 2013) (reversing for failure to provide logical bridge as to percentage of time claimant would be off-task); ***Kukec v. Berryhill,*** 2017 WL 5191872, at *4 (N.D. Ill. 2017) ("the Court endeavored to follow the ALJ's analysis, but the entire off-task bridge and conclusion have disappeared after the ALJ's hypothetical to the VE.").

The ALJ has failed to offer any explanation for why he did not account for her fatigue in the RFC analysis. The Commissioner did not address this argument. Therefore, without any explanation the court is unable to trace the ALJ's path of reasoning. The ALJ has failed to provide a "logical bridge" between the evidence and the RFC conclusion, requiring remand. *See*

***Terry v. Astrue,*** 580 F.3d 471, 476–77 (7th Cir. 2009) (remanding where ALJ's RFC determination was not supported by substantial evidence).

The ALJ gave little weight to the opinions of Hampton-Lewis's treating psychiatrists, Drs. Marlowe and Kular. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(c)(2)**; *see* ***Bates v. Colvin***, 736 F.3d 1093, 1099 (7th Cir. 2013); ***Punzio v. Astrue***, 630 F.3d 704, 710 (7th Cir. 2011); ***Schmidt v. Astrue***, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000) (quoting ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)).

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." ***Bates***, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. ***Schmidt***, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, ***Latkowski v. Barnhart***, 93 F. App'x 963, 970-71 (7th Cir. 2004); ***Jacoby v. Barnhart***, 93 F. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional

information.  *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009)).  Ultimately, the weight accorded to a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are."  *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see Punzio*, 630 F.3d at 713.

If the ALJ decides that the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion."  *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include:  1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area.

First, Hampton-Lewis has argued that the ALJ failed to evaluate the opinions of Drs. Marlowe and Kular according to the requirements of 20 C.F.R. § 404.1527.  Hampton-Lewis's arguments focus on the ALJ's evaluation of Dr. Kular's findings.  Hampton-Lewis contends that the ALJ neither considered the length of Dr. Kular's and Hampton-Lewis's relationship nor the extent of the relationship.  Dr. Kular began treating Hampton-Lewis in 2012 and saw her every four to six weeks.  (Tr. 946).  "When the treating source has seen you . . . long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight . . . "  **20 C.F.R. § 404.1527(c)(i).**

Moreover, the ALJ assigned some weight to the State agency psychological consultants. Generally, an ALJ affords more weight to the opinion of an examining source than the opinion of a non-examining source, but the ultimate weight given depends on the opinion's consistency with the objective medical evidence, the quality of the explanation, and the source's specialty. ***Givens v. Colvin***, 551 F. App'x 855, 860 (7th Cir. 2013); **20 C.F.R. § 404.1527(c)**. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." ***Gudgel v. Barnhart***, 345 F.3d 467, 470 (7th Cir. 2003). Additionally, the State agency psychological consultants' opinions were given in October 2013, several years prior to the date of this decision. *See **Childress v. Colvin,*** 845 F.3d 789, 792 (7th Cir. 2017) (evidence presented by non-treating physicians was essentially worthless since they did not have access to the full medical record).

The ALJ discounted Dr. Kular's opinion because despite her extreme work preclusive limitation, she only assessed Hampton-Lewis with a GAF score of 55. However, the ALJ indicated that he assigned little weight to opinions expressed as GAF scores because a GAF score is not dispositive for Social Security disability purposes. Furthermore, the ALJ found that the social limitations found by Dr. Kular were inconsistent with Hampton-Lewis's report that she got along well with family, friends, neighbors, or others. The ALJ indicated that Dr. Kular's finding that Hampton-Lewis had extreme mood swings and was hospitalized due to them was inconsistent with the medical history in her own treatment notes that did not reflect hospitalization since 2005.

Next, the ALJ noted that Dr. Kular did not assess Hampton-Lewis with the same limitations as Dr. Marlowe. However, the ALJ specifically did not point to the inconsistencies

between the two opinions.  Dr. Kular found that Hampton-Lewis had serious limitations in working in coordination with others; completing a normal workday without interruption; accepting instructions and responding appropriately to supervisors' criticism; performing at a consistent pace; responding appropriately to changes in a routine work setting; and dealing with normal work stress.  (Tr. 948).  Additionally, Dr. Kular found that Hampton-Lewis had similar serious limitations in understanding, remembering, and carrying out detailed instructions and with dealing with the stress of semi-skilled and skilled work.  (Tr. 949).  Dr. Kular opined that Ms. Hampton-Lewis would need to be absent from work more than four days per month due to her impairments.  (Tr. 950).

Dr. Marlowe found serious limitations in Hampton-Lewis's ability to maintain attention for a two hour segment; maintain regular attendance; sustain an ordinary routine without special supervision; complete a normal workday without psychological interruptions; respond appropriately to changes in a routine work setting; deal with normal work stress; understanding, remembering, and carrying out detailed instructions as well as dealing with the stress of semi-skilled and skilled work.  (Tr. 1008-09).  Dr. Marlowe opined that Hampton-Lewis would need to miss three days of work per month due to her impairments.  (Tr. 1009).

The court finds that the ALJ may have found sound reasons for not giving Dr. Kular's opinion controlling weight.  However, the ALJ erred by assigning the opinion little weight without considering the regulatory factors under 20 C.F.R. § 404.1527(c).  The ALJ has failed to consider the length of Dr. Kular's and Hampton-Lewis's relationship or the extent of their relationship, which are two factors that weigh heavily in favor of assigning controlling weight to Dr. Kular.  Moreover, the ALJ failed to consider the consistency of the medical opinions with the opinions of other the other treating and reviewing medical sources.  *See **Gerstner v. Berryhill,***

879 F.3d 257, 263 (7th Cir. 2018) ("Although the ALJ discussed the weight to afford these physicians' opinions, he did not specify how or to what extent he considered these opinions when deciding to assign little weight to Dr. Callaghan's opinions.").

Finally, Hampton-Lewis has argued that the ALJ failed to analyze her pain pursuant to SSR 16-3p. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. ***Shideler v. Astrue,*** 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must support his evaluation with specific reasons that are supported by the record. ***Pepper v. Colvin,*** 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility."

Under SSR 16-3, the ALJ first must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

    (i) The individual's daily activities;

    (ii) Location, duration, frequency, and intensity of pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) Type, dosage, effectiveness, and side effects of any medication;

(v) Treatment, other than medication, for relief of pain or other symptoms;

(vi) Other measures taken to relieve pain or other symptoms;

(vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 404.1529(c)(3).**

Hampton-Lewis has argued that the ALJ did not specifically discuss which allegations he found credible and those he found incredible. She contends that the ALJ summarized her subjective allegations and did not explain why they were not consistent with the evidence of record. Moreover, she asserts that the ALJ ignored her limitations in daily activities. Also, she has indicated that the ALJ did not consider her good work history. However, a good work history "is still just one factor among many, and it is not dispositive." ***Summers v. Berryhill,*** 864 F.3d 523, 529 (7th Cir. 2017) (internal quotation marks and citation omitted); *see also* **20 C.F.R. § 404.1529(c)(3).**

The Commissioner contends that the ALJ has asserted valid reasons to support his credibility finding. First, the Commissioner notes that the ALJ considered the objective medical evidence in determining that Hampton-Lewis's subjective complaints were unreliable. Moreover, the ALJ noted that Hampton-Lewis engaged in relatively little treatment. (Tr. 25). Therefore, he considered her treatment, other than medication, for relief of pain or other symptoms. **20 C.F.R. § 404.1529(c)(3)(v).** The Commissioner has asserted additional arguments. However, the additional reasons provided by the Commissioner did not appear in the ALJ's opinion, and thus they cannot be used here. ***SEC v. Chenery Corp.,*** 318 U.S. 80, 87–88, 63 S. Ct. 454, 87 L. Ed. 626 (1943).

The court is not finding the ALJ subjective symptom analysis was patently wrong. However, since this matter is being remanded on different issues the ALJ may reconsider Hampton-Lewis's subjective allegations and indicate what symptoms he finds credible and those he finds not credible.

Hampton-Lewis has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." ***Allord v. Astrue***, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. ***Briscoe v. Barnhart***, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 29th day of November, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge